IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEIDA G.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 6129 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§416(I), 423, 1381a, 1382c seven years ago in September and October of 2015. (Administrative Record (R.) 338-48). She claimed that she became disabled as of June 25, 2015, due to neuropathy, congestive heart failure, coronary artery disease, diabetes, and spinal stenosis. (R. 338, 368). Over the next three years, the plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. Plaintiff filed suit under 42 U.S.C. § 405(g) back on September 7, 2018, and the case was assigned to a district court judge. The case was fully briefed as of April 4, 2019. [Dkt. ##10, 13, 17]. Nothing further happened before that first judge for about a year. Then, on February 28, 2020, the Executive Committee reassigned the case to a newly appointed judge along with 312 other pending cases. [Dkt. #14]. Another two and a half years

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

elapsed with no activity from the court or the parties until the parties finally consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on August 10, 2022. [Dkt. #23]. It is the ALJ's November 14, 2017 decision (R. 11-28) that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## I.

### A.

Plaintiff was born on June 1, 1962 (R. 338), making her 53 years old when she claims she became unable to work, and 55 years old at the time of the ALJ's decision. (R. 28-39). She has a stellar work record, working consistently from 1994 through 2015. (R. 353). She's had a variety of jobs, working in factories and in housekeeping, and held data entry job for a medical supplier. (R. 430). The last job she had was on an assembly line, packing products; but she could no longer work after suffering a heart attack. (R. 36). She takes a pharmacy full of medications for her blood pressure, diabetes, cholesterol, neuropathy, pain, and heart issues. (R. 411).

At 1371 pages, the administrative record in this case is not incredibly long, at least not as these cases go, but it is a bit of a mess. For unknown reasons, it was filed in 25 separate exhibits which, of course, significantly hampers review of the evidence and is, perhaps, one reason why it sat so long before two district court judges.[2] Be that as it may, the plaintiff claims that she has been unable to work for over seven years and has been waiting four years for the district court to take up

---

[2] The size limit for a single electronic exhibit is 30 MB. None of the exhibits filed are more than 3.5 MB, so there is no explanation for how the filing was handled here.

2

her appeal of the denial of her application for benefits.[3] As such, we shall dispense with a tedious summary of the entire record and focus on the evidence that the plaintiff and the Commissioner indicate is pertinent to this case.

**B.**

After an administrative hearing at which plaintiff, represented by counsel testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: coronary artery disease status post two coronary artery bypass grafts; peripheral vascular disease in the right leg; spinal stenosis and degenerative disc disease of the lumbar spine; and diabetes with neuropathy. (R. 17). The ALJ found that additional impairments – obesity, opioid abuse, degenerative changes of the left knee and cervical spine were non-severe. (R. 17-18). The ALJ then found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404,

---

[3] The lengthy period this case has gone without activity before the parties consented to my jurisdiction means it arrived on my docket as already reportable under the Civil Justice Reform Act, 28 U.S.C. § 476(a)(3). Under the Federal Rules of Civil Procedure, the Court has a duty "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. "[T]he public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law via the Civil Justice Reform Act of 1990." *Chagolla v. City of Chicago*, 529 F.Supp.2d 941, 946-47 (N.D.Ill. 2008). One way the CJRA works toward the goal of prompt resolution is through required public reporting of cases that have been pending before a district court for over three years. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000); *Riviera Fin. v. Trucking Servs., Inc.*, 904 F. Supp. 837, 840 (N.D. Ill. 1995).

Moreover, a Social Security case becomes reportable as "overdue" about ten months after the Commissioner files the certified transcript. The standard briefing schedule, N.D.Ill.L.R. 16.4 takes up four of those months. Parties can help out, of course, by meeting briefing schedules without the innumerable extensions which are all too often needlessly sought in all too many cases. Additionally, from time to time, with large dockets, judges and magistrate judges can lose track of pending cases and motions. The Local Rules provide a mechanism by which the parties can remind a judicial officer of a pending matter, *see* N.D.Ill.L.R. 78.5, although it is understandable that parties might be hesitant to make use of it.

Subpart P, Appendix 1, focusing on the listings that applied to musculoskeletal disorders (1.02), peripheral vascular disease (4.04, 4.12), and diabetes (11.14). (R. 18-19).

The ALJ then determined that plaintiff could perform sedentary work with the following additional limitations:

> She can lift and/or carry ten pounds, either frequently or occasionally. She frequently can stoop, kneel, crouch, and crawl; occasionally can climb ramps and stairs; but can never climb ladders, ropes, and scaffolds, or work at unprotected heights. She should avoid work that involves walking on uneven ground, operation of heavy machinery, or commercial driving; and should also avoid concentrated exposure to humidity and poorly ventilated spaces. She can use of a cane or walker to get to and from the work station.

(R. 19). The ALJ then summarized the plaintiff's allegations. She noted that plaintiff alleged she that she was no longer able to work due to neuropathy, congestive heart failure, coronary artery disease, diabetes, and spinal stenosis. Plaintiff said she suffered from severe neuropathy and needed to walk with a walker or cane. The ALJ further noted that the plaintiff also alleged she had difficulty with lifting, squatting, bending, walking, and kneeling, and stated that she could only walk twenty to twenty five steps before needing to stop and rest. She had her right big and second toe amputated, and complained of back pain, diabetes, and little to no feeling in her right foot. (R. 20). The ALJ then determined that while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 20). The ALJ then discussed the medical record, stating that the plaintiff's activities – including working two days a week for four hours a day doing some housekeeping for a senior client, shopping, preparing meals, doing laundry, and using public transit – were not consistent with her allegations. (R. 35).

The ALJ then discussed the medical record, noting a series of normal and abnormal findings and, concluding, overall, that they were consistent with a reduced sedentary residual functional capacity. (R. 20-22). The ALJ pointed out that the medical evidence indicated that the plaintiff had a number of negative straight leg raises, normal strength findings, full range of motion findings, and intact sensation findings. The ALJ also noted there were a number of treatment notes demonstrating normal gait and heel and toe walk. (R. 22).

As for medical opinions, the ALJ afforded the opinions from the state agency reviewing physicians partial weight, explaining that they were partially consistent with the overall evidence of record. Specifically, the ALJ found that the limitations of no climbing ladders, ropes and scaffolds, and avoiding concentrated exposure to pulmonary irritants, vibration and hazards were supported by evidence demonstrating the plaintiff had tenderness, reduced range of motion, diminished sensation, and decreased strength. But the ALJ rejected the state agency reviewing physicians' findings that plaintiff could perform light work, explaining that evidence showing occlusion of the right femoral artery requiring revascularization and osteomyelitis of the right great toe resulting in partial amputation supported a restriction to sedentary work. (R. 22).

Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff could still perform her past sedentary work as a Receptionist and Accounting Clerk. (R. 23). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 23).

## II.

If the ALJ's decision is supported by "substantial evidence", the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to

5

negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts,

6

we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[4] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[5] In this instance, there is a disconnect

---

[4] By way of example, in the Seventh Circuit's recent ruling in *Jarnutowski v. Kijakazi*, No. 21-2130, 2022 WL 4126293 (7th Cir. Sept. 12, 2022), two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did. The Magistrate Judge who had reviewed the ALJ's decision (by consent) at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

[5] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written
(continued...)

between the record and the ALJ's conclusion, and the court is unable to see how the ALJ got from one to the other. Thus, reversal is appropriate.

## II.

The first issue the plaintiff has with the ALJ's decision is the ALJ's determination that the plaintiff's vascular disease did not meet the listings. The applicable listing here is 4.12, which requires:

> . . . intermittent claudication (see 4.00G1) and one of the following:
>
> A. Resting ankle/brachial systolic blood pressure ratio of less than 0.50.

---

[5] (...continued)
evaluation of every piece of testimony and evidence submitted," but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted)(parentheses in original).

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

OR

B. Decrease in systolic blood pressure at the ankle on exercise (see 4.00G7a and 4.00C16–4.00C17) of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level.

OR

C. Resting toe systolic pressure of less than 30 mm Hg (see 4.00G7c and 4.00G8).

OR

D. Resting toe/brachial systolic blood pressure ratio of less than 0.40 (see 4.00G7c).

20 C.F.R. § 404, Subpt. P, App'x. 1, 4.12. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). What the ALJ provided here was a pretty perfunctory analysis, much the same as that rejected in *Minnick*, 775 F.3d at 935 ("The evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing."). But sometimes, when the path from the record to the conclusion is obvious, no more is required. *See, e.g., Erica v. v. Saul*, No. 20 C 1106, 2020 WL 6381364, at *4 (N.D. Ill. Oct. 30, 2020)(". . . the ALJ did not say much, but there was not much to say. The listing requires three qualifying tests; plaintiff presents only two. There was no need for some convoluted, intricate analysis.").

In this case, the ALJ reiterated the listing's requirements, and conclusorily stated that the evidence did not meet any of them and cited a handful of reports:

> The claimant's peripheral vascular disease fails to meet or medically equal section 4.12 of Appendix 1 impairments. The record evidence fails to demonstrate peripheral arterial disease by appropriate medically acceptable imagining causing intermittent

9

claudication and a resting ankle brachial systolic blood pressure ratio of less than 0.50, or decrease in systolic blood pressure at the ankle on exercise of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level, or resting toe systolic pressure of less than 30 mm Hg, or resting toe brachial systolic blood pressure ratio of less than 0.40 (1F/58; 1F/73-74; 2F/6; 4F/12; 8F/7; 8F/12).

That's not ideal, but might be sufficient if the cited records obviously supported the ALJ's conclusion. So – and because the ALJ does not elaborate as to what each piece of evidence she cited says or how it supports her conclusion – we have to take a look at each report in the ALJ's string cite. Again, certainly not ideal:

1F/58– August 25, 2015: No evidence of acute right lower extremity deep vein thrombosis; incidentally noted occlusion of the right common femoral artery (R. 535). This particular report confirms arterial occlusion, but doesn't confirm or rule out listing level severity.

1F/73-74 – August 26, 2015: occlusion of the right superficial femoral artery. . . with decreased caliber of the vessel upon reconstitution through the proximal portion; artherosclerotic disease throughout the vessels of both extremities with the right being greater than the left (R. 550-51). This report does not include any reading so it was essentially irrelevant for the purposes of determining whether the plaintiff's arterial disease – which the report *did* confirm – met Listing 4.12.

2F/6 – October 17, 2015: no evidence of deep vein thrombosis, right lower extremity (R. 570). As the impairment at issue is arterial disease, and the listing requires blood pressure findings, this report about venous issues is irrelevant on two levels.

4F/12– January 6, 2016: right leg: resting toe pressure 43; brachial 116; ankle PT 50; ankle DP 82; ankle brachial index .71; left leg: resting toe pressure 67; brachial 116; ankle PT 120; ankle DP 123; ankle brachial index 1.06; right ankle index within lower limits of mild vascular disease; light ankle

index within normal range; dampened waveforms suggestive of chronic ischemic disease (R. 676-77). The numbers in this report do appear to support the ALJ's determination, as the plaintiff concedes. [Dkt. # 10, at 6].

8F/7 – September 9, 2016: debilitating claudication of right lower extremity (R. 980); near occlusive lesions but less than 10% stenosis (R. 980). This report, again, does not rule out meeting the listing and indeed, confirms the listing's initial requirement of claudication.

8F/12 – July 14, 2016: right leg: moderately severe to severe decrease in arterial flow; left leg: moderately severe to severe decrease in arterial flow (R. 985). The report certainly does not rule out meeting the listing and, more importantly, the ALJ apparently ignored the findings section of the report because the readings – right ankle PT index .47 and right digit index 0.26 (R. 984) appear to meet Sections A (pressure ratio of less than 0.50) and D (pressure ratio of less than 0.40) of the listing, respectively.

Given that final report in the ALJ's string cite, and the fact that all but one of the other reports were either irrelevant or confirming claudication and arterial disease, the perfunctory manner in which the ALJ addressed Listing 4.12 was inadequate. Moreover, the ALJ seemingly just ignored another line of evidence that also suggests listing level severity. On September 5, 2015, plaintiff's treating physician indicted she had been hospitalized for acute arterial vascular insufficiency and an ABI of .2. (R. 556). That hospitalization and study are from August 25, 2015. (R. 536).

As these readings from August 2015 and July 2016 appear to show listing level severity, the ALJ had to do more than just cite to them and say, in effect, "there's nothing to see here." She had to confront this evidence and explain why it did not undermine her conclusion. *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018)("An ALJ must grapple with lines of evidence that are contrary to

her conclusion, and here the ALJ did not do so."); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)("ALJs must confront evidence that supports a finding of disabled, like Britt's testimony, and then explain why it was rejected."); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014)("An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion."). While the ALJ didn't necessarily have to mention and address the pertinent readings in the step three section of the decision, *see Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) ("[N]othing in Chenery prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision."), she had to address them at some point. But she never did. She completely ignored the evidence from July 2016, skipping from March 2016 to September 2016. (R. 21). As for the evidence from August 2015, the ALJ made no mention of the pertinent blood pressure readings. (R. 20).

As the Commissioner argues, the burden is on the plaintiff to establish that her impairment meets or equals an impairment enumerated in the listings, not upon the Commissioner to prove that she does not satisfy a listing. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). But the plaintiff has directed the court to such evidence in her brief [Dkt. #10, at 6], and the Commissioner has chosen not to address it. [Dkt. # 13, at 5]. Like the ALJ, the Commissioner makes no mention of the pertinent readings, and makes no attempt to explain why these apparently listing level readings were so off-handedly dismissed. [Dkt. #13, at 2-3, 5]. Indeed, throughout the Commissioner's brief, the Commissioner confuses Listing 4.12 – which is the listing plaintiff has made this case about – with Listing 1.04, an entirely different listing with entirely different requirements. [Dkt. #13, at 3, 5].

While the Commissioner, like the ALJ, fails to address the readings at issue, the Commissioner does attempt to edit the ALJ's opinion by adding some additional support for the conclusion that Listing 4.12 was not met. The Commissioner submits that "Drs. Jhaveri and Barnes, the state agency physicians, agreed that plaintiff's impairments did not meet or equal a listed impairment." (Tr. 211-14, 234-48). True, both the reviewing physicians mentioned the listings, but provided no analysis *or* conclusion. (R. 212, 221). They obviously didn't think the listing was met – we don't know why – because they simply proceeded through the five-step analysis. But, as with the ALJ, they did not look at the pertinent evidence at issue here, and unsupported and unexplained conclusions are not enough. Dr. Jhaveri makes no mention of the study and readings from August 2015, and his review of the record occurred on January 22, 2016, so he did not even have – and obviously consider – the July 2016 report. (R. 214, 223). Dr. Barnes' offering – completed April 25, 2016 – suffers from the same deficiencies. (R. 246-47, 251). So, while reviewing courts don't allow the Commissioner's lawyers to flesh out ALJs' decisions with additional reasoning, *see, e.g., Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022)("We must confine our review to the reasons supplied by the ALJ, rather than allowing the government to invent new findings to rescue an insufficient decision on appeal."); *Lothridge v. Saul*, 984 F.3d 1227, 1234–35 (7th Cir. 2021)("But this attempt to supply a post-hoc rationale for the ALJ's decisive findings runs contrary to the *Chenery* doctrine.") the state agency reviewers' opinions wouldn't help in this case, *Chenery* doctrine or no *Chenery* doctrine.

So, this case has to be remanded. There has to be some explanation of why the pertinent readings for August 2015 and July 2016 did not meet Listing 4.12. Since the numbers are never even mentioned, it may well be a case of neither the ALJ nor the Commissioner's lawyer having the

13

medical expertise to interpret the numbers against the numbers in the listing. As such, the services of a medical expert ought to be employed on remand. See SSR 17-2p (When evaluating ". . . whether an individual's impairment(s) meets or medically equals a listing at step 3 of the sequential evaluation process . . . adjudicators at the hearings level may ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)."). While the court is loath to send such a very old case back to the Commissioner for additional proceedings, we certainly cannot make the determination of listing level severity on our own. *See Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020); *Kaminski v. Berryhill*, 894 F.3d 870, 876 (7th Cir. 2018).

## CONCLUSION

For the foregoing reasons, this case is remanded to the Commissioner.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 9/21/22

14